[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Raymond Ciarello brings this action seeking money damages for injuries which he allegedly sustained while taking a tae kwon do class. The class was given by Kim and Moon's Academy of Judo and Karate, Inc., (the "Academy"), one of the defendants. The class teacher was the defendant Jun Hang Kim, the sole shareholder of the Academy.
The plaintiff contends that during a class at the Academy on or about February 10, 1992, he fell while landing after jumping to perform a flying side kick. He claims that the fall was caused by unevenness or a gap in the matting which covered the floor. The defendants deny that the plaintiff's injuries occurred as he contends and have also filed two special defenses. The first alleges that in consideration for martial arts training, the plaintiff released the defendants from any claim for injuries during his instruction. The second special defense alleges that the plaintiff failed to disclose a prior injury which made him unable to participate in martial arts instruction. The defendants also filed a counterclaim alleging that the plaintiff breached his agreements not to sue the defendants and to hold the defendants harmless from any injuries incurred during instruction.
The plaintiff testified at trial that he first had trouble with his left knee in December, 1991, after he had been taking karate lessons at the Academy for two months. He received a diagnosis of a mild sprain and was given an elastic brace to wear during tae kwon do lessons. He testified that he was wearing his brace during a karate lesson on February 10, 1992, when the class was practicing flying side kicks. The plaintiff ran and jumped to perform the kick. However, he testified, he fell when his foot landed on the edge of a floor mat, on an uneven area between two mats where the mats did not abut each other. He testified that his ankle turned to the side and then CT Page 10219 his leg buckled and he felt severe pain. He later underwent several surgeries on his left knee and brought this action seeking damages for his injuries.
With respect to the condition of the floor mats on the date of the injury, the plaintiff testified that when he arrived for his class, the floor mats did not abut each other and Damian Fries, the instructor, was kicking the mats into place. The plaintiff also testified that one portion of the floor was not covered with mats and Fries said the matting would be completed after class, that some mats were being replaced by the new owner of the Academy, Jun Hang Kim. The plaintiff also testified that the mats were covered by a blue covering or tarpaulin which was only loosely tacked down.
The plaintiff called Fries as his second witness. Fries contradicted the plaintiff's testimony in several material respects. First, he testified that although he was a black belt in karate, he was a student in the class which was held on February 10, 1992, not the teacher. (Kim, the owner of the Academy, later testified that he was the teacher of the class in question.) Fries testified that he saw the plaintiff do the flying side kick and then fall in pain, but Fries testified that it looked to him as if the plaintiff's knee just gave way on the landing. Fries testified that he observed no problems or unevenness with the mats that day and that none of the seven or eight other class members experienced any difficulty with the mats that day. Fries saw the plaintiff's kick and observed that his knee simply buckled on landing. Fries testified that in his ten years' experience, he has seen other class members, especially the more inexperienced ones like the plaintiff, fall on landing after a flying side kick because of the balance which is required to land correctly. Fries further testified that after the plaintiff was injured, he called Fries at home and sought Fries' help. The plaintiff wanted Fries to talk to Kim and ask Kim to pay money to the plaintiff to meet his medical expenses. Fries stated that the plaintiff did not say that he thought Kim was liable for the injuries nor did he complain about any gap or unevenness in the mats. (Additional evidence showed that the plaintiff never told his physician or other medical personnel that he landed on a gap or unevenness in the matting, only that his knee buckled when he landed.) Fries' testimony on each of these material points was credible. The plaintiff did not retake the stand to contradict any of Fries' testimony. CT Page 10220
The plaintiff's third witness was a man who happened to observe the class on February 10, 1992 because his son had an interest in taking karate lessons. He testified that the blue tarp over the mats was "bunched" and "wavy," not tight. He admitted, however, that he did not see how the plaintiff was injured.
Kim also testified. Kim, a grand master instructor, took over the Academy in December, 1991 or January, 1992. He testified that in January, 1992, he removed the hard, canvas-covered mats which had been on the floor and replaced them. First, he put wood around the perimeter of the room to hold the mats in place. Then he glued the bottom of each of the mats to the floor and on the top of the mats, taped each mat on all four edges to the adjacent mats. A blue tarp was then placed on top of the mats. This is the method which Kim learned during martial arts training in Korea. Secured by the wood, glue and tape, he testified, the mats cannot become loose. Kim also testified that he routinely checked the condition of the matting.
Kim testified that the plaintiff came to the Academy two or three times after his knee injury. He told Kim he had had several knee operations and could not work. The plaintiff's medical insurance did not pay his medical bills in full and he asked Kim for money to pay the bills. First, he asked for $500. Later, he asked for $200, but the plaintiff never said that he fell because of a gap in the mats nor did he say that he felt Kim was responsible for his injury.
A judo student at the Academy, Anthony Olivares, testified that he helped Kim install the mats in January, 1992. Olivares helped tape the rectangular foam mats together. He testified that once the mats were taped together, they could not move because they were taped on all four sides. Olivares testified that in doing judo, he tumbled, fell and threw himself on the mats, but he had no problems with the mats after January, 1992. There were no gaps in the mats.
The plaintiff also submitted into evidence a photograph of the matted floor of the Academy taken in April 1992. The photograph shows a blue tarp covering the floor. Slight ridges can be observed in a rectangular pattern, probably where the mat edges were taped together. The photograph does not show, CT Page 10221 however, any spots where the mats did not abut each other nor any uneven mat edges or gaps. The photograph conforms with Olivares' testimony that there might have been some slight variations in the mats, but nothing that would cause a problem, such as causing an ankle to turn.
The court credits the testimony of Damian Fries, Jun Hang Kim and Anthony Olivares. The plaintiff's testimony concerning the condition of the mats and the cause of his injury was not credible. The plaintiff failed to sustain his burden of proving that the defendants, the Academy and Kim, failed to exercise reasonable care with respect to the floor matting at the Academy. The court finds that the matting was installed in January 1992 in accordance with accepted practices in the martial arts field and that it was properly maintained thereafter. Judgment is entered for the defendants on the complaint.
In their three-count counterclaim, the Academy and Kim allege that the plaintiff breached his written agreement to release the Academy from all claims of injury occurring during martial arts classes and not to bring suit for such injuries by filing this action. The counterclaim seeks awards of money damages and attorneys' fees.
At trial, Kim testified that the plaintiff agreed in writing that he would not sue the Academy. The agreement was admitted into evidence. The defendants failed, however, to present any evidence of the damages or attorneys' fees which they claim. In their post-trial brief, the defendants stated that "[i]n the event that judgment is rendered against the defendants . . . then those defendants respectfully request that judgment be rendered in their favor against the plaintiff with respect to their counterclaim . . ." It appears that the defendants do not intend to press their counterclaim unless judgment is rendered against them on the complaint. The court would be unable to enter judgment in defendants' favor in any event because there was no evidence at all of damages. Judgment is entered for the plaintiff on the counterclaim.
VERTEFEUILLE, J. CT Page 10222